UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GASANA GHADI,

                  Petitioner,                  Case No. 1:26-cv-1825

v.                                           Honorable Robert J. Jonker

KEVIN RAYCRAFT et al.,

                  Respondents.
_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1).  For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## BACKGROUND

Petitioner was born in Rwanda but is a citizen of the Democratic Republic of the Congo (DNC).  (Decl. of Richard Tiruchelvam, ECF No. 4-1, PageID.60.)  Petitioner entered the United States as a refugee in 2023.  (*Id.*)  In 2024, he was convicted of aggravated assault and received a twelve-month sentence.  (*Id.*)  When that sentence ended in May 2025, he was transferred to ICE custody.  (*Id.*)  The following month, an Immigration Judge granted Petitioner's request for voluntary departure and required Petitioner to provide DHS with a passport or other travel document by August 18, 2025.  (*Id.* at PageID.61.)  The judge explained that failure to meet the deadline would result in withdrawal of voluntary departure and removal to Rwanda, or, if Rwanda

declined acceptance, to the DNC.[1]  (*Id.*)  Both parties waived appeal.  (*Id.*)  Petitioner did not provide a travel document by the deadline, and his voluntary-departure grant automatically converted into a final order of removal.  (*Id.*)

On August 22, 2025, DHS requested a travel document from Rwanda for Petitioner.  (*Id.*) On January 26, Rwanda informed DHS that it would not issue a travel document for Petitioner because Petitioner is a citizen of the DNC, not Rwanda. (*Id.*)  On January 31, DHS provided Petitioner with a travel-document application for the DNC, but Petitioner refused to complete it because he wished to be removed to Rwanda, not the DNC.  (*Id.* at PageID.62.)  On February 1, 2026, DHS completed the application on Petitioner's behalf and submitted it to the DNC.  (*Id.*) On April 2, DHS was notified that the DNC is currently issuing travel documents, and DHS believes Petitioner's travel document will be issued in the reasonably foreseeable future.  (*Id.*)

On June 10, 2026, Petitioner filed a petition for writ of habeas corpus with this court.  (ECF No. 1.)  In his petition, Petitioner challenges the lawfulness of his current detention and asks the Court to assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner.  (Pet., ECF No. 1, PageID.21–22). In an order entered on June 11, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 3).  Respondents filed their response (ECF No. 4) on June 16, 2026, and Petitioner filed his reply (ECF No. 5) on June 22, 2026.  In his reply, Petitioner states that

---

[1] In his reply, Petitioner takes issue with the fact that Respondents did not attach a copy of the immigration judge's order. (Reply, ECF No. 5, PageID.67.)  Attaching a copy of the order rather than to summarizing its  contents in a sworn affidavit would have avoided potential evidentiary objections.  But a sworn affidavit still has no evidentiary value.  Particularly in the context of immigration-related habeas corpus cases, the Court frequently relies on the sworn testimony of government officials.  Moreover, here the most relevant aspect of the affidavit is the timeline it recounts of the government's efforts to obtain travel documents for Petitioner, not the precise contents of any particular order. That timeline provides the basis for the government's contention that removal is still likely to occur in the reasonably foreseeable future.  Petitioner does not argue that the timeline is fabricated or false, so the Court will consider the statements contained in the affidavit alongside the other exhibits that have been submitted by each side.

"removal to the [Democratic Republic of Congo] is currently paused due to the ongoing Ebola outbreak." (*Id.* at PageID.68.)  To support this claim, he attaches an article from politico.[2] (ECF No. 5-1, PageID.75.)

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## DISCUSSION

The parties agree that Petitioner is subject to a final order of removal.  As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231.  However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment.  In response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A).  8 U.S.C. § 1231(a)(6) further provides:

---

[2] *See* Myah Ward, *Trump Administration Temporarily Pauses Deportation Flights to Congo Amid Ebola Outbreak*, POLITICO (May 21, 2026, at 05:06 PM ET) https://www.politico.com/news/2026/05/21/trump-administration-temporarily-pauses-deportation-flights-to-congo-amid-ebola-outbreak-00932722 [https://perma.cc/3XAG-HTEG].

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal." *Id.* at 699.  Therefore, the Court concluded that the removal itself must be reasonably foreseeable to fall within the post-removal-order detention authorized by the statute. *Id.*  The Court indicated that there was no specific point in time at which the detention became constitutionally impermissible, and that the allowable period would vary from case to case. *Id.*  Still, to assist the lower courts in making the difficult judgment calls about the lawfulness of detention, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701.  Even after six months , though, the Court made clear that the detention may continue unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.*  Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner points to a news article reporting that flights to the DNC have allegedly been halted by the Trump administration.  If true, that does suggest Petitioner's removal might be delayed for some additional time.  However, even assuming for the sake of argument that evidence of the cancelled flights would be sufficient to allow Petitioner to satisfy his burden under *Zadvydas*, the government has responded by showing in elaborate detail the steps that have been taken over the past few months to obtain travel documents for Petitioner and to arrange for a flight to the DNC as soon as possible.  Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution. *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit.  "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701.  Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention.  *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation.  An immigration official has testified that the government remains in active discussions with the DNC to coordinate Petitioner's removal.  Although nearly twelve months have passed since DHS began attempting to obtain travel documents for Petitioner, such a length of time is not unreasonably long for negotiating and

5

coordinating removal to a third country.  *See Abdalla*, 2017 WL 345731, at \*4 (finding continued detention reasonable where the Government anticipated progress in the near future and no country had declined repatriation).

Moreover, it is worth recognizing that Petitioner is partially responsible for the delay in his removal.  When the government first tried to obtain travel documents, Petitioner indicated that he was a citizen of Rwanda, which turned out to not be true.  However, it took the government five months to realize that Petitioner was not a citizen of Rwanda but was actually a citizen of the DNC.  Then, when the government presented Petitioner with an application for travel documents to the DNC in January of 2026, Petitioner refused to sign those documents.  At that point in time, there was not yet an Ebola outbreak in the DNC,[3] and immigration-removal flights to that country were still occurring.

On this record, Petitioner's removal remains significantly likely in the reasonably foreseeable future.  Accordingly, the petition will be denied without prejudice. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

### CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:  July 14, 2026                            /s/ Robert J. Jonker
                                                          Robert J. Jonker
                                                          United States District Judge

---

[3] *See Ebola Disease Caused by Bundibugyo Virus – Democratic Republic of the Congo*, WORLD HEALTH ORGANIZATION (May 21, 2026), https://www.who.int/emergencies/disease-outbreak-news/item/2026-DON603?utm_source=copilot.com [https://perma.cc/FW98-8DGP] (indicating that the first confirmed cases were discovered in mid-May).